**In the Matter of NANCANT, INC., Debtor.**

**Bankruptcy No. 80–00241–G.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 23, 1981.

Jeffrey Kosberg, Boston, Mass., for Nancant, Inc.

Philip J. Hendel, Springfield, Mass., for Town of Monson.

MEMORANDUM AND ORDER ON MOTION TO DISMISS CHAPTER 11 PROCEEDINGS.

PAUL W. GLENNON, Bankruptcy Judge.

The Town of Monson ("Monson") is a tax creditor of Nancant, Inc. ("Debtor") in the

amount of $180,000, which claim is listed in the debtor's schedules as unliquidated, disputed and contingent. Monson has filed a Motion To Dismiss these Chapter 11 proceedings pursuant to Section 1112(b) of the new Bankruptcy Code, in effect since October 1, 1979. That section provides, inter alia, that the Bankruptcy Court may, on request of a party in interest, and after notice and a hearing, dismiss a case under Chapter 11 *for cause,* including nine separate criteria which, it is clear from the legislative history and court decisions, is not an exclusive list.

Briefly, the facts are that Nancy Cantor, as Trustee of the Cantor Monson Trust, filed for Chapter XII relief under the old Bankruptcy Act. That proceeding was dismissed because such a trust was not deemed a "person" entitled to relief under Chapter XII. After appeal to the District Court and the Circuit Court of Appeals, my original decision was affirmed. Thus, on February 1, 1980 I reaffirmed my original order of dismissal of the Chapter XII proceeding.

On February 12, 1980, the sole asset of the Cantor Monson Trust, a parcel of property known as the Wilbraham-Monson Academy, was transferred to a newly formed corporation, Nancant, Inc. The subsequent day, February 13, 1980, Nancant, Inc. filed for Chapter 11 relief under the new Bankruptcy Code. It does not appear that the debtor has ever operated a business at this site. Further, the asset, which was the sole asset of the Cantor Monson Trust, is also the sole asset of the debtor, and is listed in the schedules as having a value of $300,000.

Monson has filed the within Motion arguing that, first, the transfer on the eve of bankruptcy of the trust property to the corporation was solely for the purpose of circumventing my earlier fundings denying Chapter XII relief and that, second, such a conversion from Chapter XII to Chapter 11 under the new Code constitutes a subversion of the intention of the Court in the original instance and is therefore not filed in good faith. The debtor has countered by averment that the organization of Nancant,

Inc. and the transfer of the Monson Academy property was effected because of a realization that any rehabilitation of the property would require the involvement of investors who would require equity participation with limited liability, something which was impossible under the trust arrangement under which title to the property was originally held. The debtor has only one general unsecured creditor in the nominal amount of $200.00. The real estate is subject to a first and second mortgage totalling $345,814.88, and there is the $180,000 liability to Monson. Thus, this Chapter 11 involves only four creditors, only one of which is scheduled as unsecured. However, the amount of secured indebtedness and tax priorities greatly exceeds the value of the real estate in question. The debtor asserts that it has reached preliminary agreements with all creditors except Monson, and says further, that the first mortgagee has agreed to advance (invest) funds to refurbish the property to some business use other than as a private school. Finally, the debtor claims that the taxes assessed by Monson are excessive and seeks a reduction of that amount pursuant to Section 505 of the Bankruptcy Code. According to the debtor, without reduction of the allegedly excessive tax burden, there will be no new funds forthcoming for reorganization purposes.

## DISCUSSION

Section 1112(b) of the new Bankruptcy Code provides a list of nine reasons sufficient *for the court to find cause* to dismiss a Chapter 11 proceeding. It is clear from the legislative history [House Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 405, 406 Senate Rep. No. 95–989, 95th Cong., 2d Sess. (1978) 117, U.S.Code Cong. & Admin. News 1978, 5787, 5903, 6362] that, "[T]his list is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." Thus, what is "cause" for dismissal is subject to judicial discretion under the circumstances of each case.

■ The nexus of Monson's Motion is that a) the transfer on the eve of bankruptcy, from an otherwise unqualified debtor to one which is qualified, was merely an attempt via a change in form to circumvent the court's decision that it lacked jurisdiction, and b) that, if jurisdiction did not lie in the first instance, it should not lie upon reapplication under the new Code. More simply, Monson is arguing that this petition was not filed in "good faith". That term is not found in the new Bankruptcy Code, but was extensively applied by the bankruptcy court in Chapter X and XII cases under the old Act. However, the "good faith" requirement has been carried over to cases under the new Code in order to protect the jurisdictional integrity of the court. See, *In re Northwest Recreational Activities, Inc.*, 4 B.R. 36, 6 B.C.D. 164 (Bkrtcy.N.D.Ga. 1980), *In re Joseph Mass*, 2 B.C.D. 973 (D.Mass.1977); *Shapiro v. Wilgus*, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932). This is so because the bankruptcy court has always had the inherent power to effect dismissal where a fraud or improper action of the debtor so adversely affected creditors by, for example, altering the rights of the parties respecting the property in the estate, so that the jurisdictional integrity of the court was in issue. *In re Northwest Recreational Activities, Inc.*, supra at 38. A number of decisions support the view that "good faith" is still a requirement for filing in Chapter 11 under the Code. *In re Northwest Recreational Activities, Inc.*, supra, *In re G–2 Realty Trust*, 6 B.R. 549, 6 B.C.D. 1072 (D.Mass.1980), *In re Dutch Flat Investment Co.*, 6 B.R. 470, 6 B.C.D. 1134 (Bkrtcy. N.D.Cal.1980).

Essentially, the court is concerned that the "schemes of improper petitioners seeking to circumvent jurisdictional restrictions" and those with "demonstrably frivolous purposes absent any economic reality" be dismissed so as to protect its jurisdictional integrity. *In re Northwest Recreational Activities, Inc.*, supra at 39.

*In re Francfair, Inc.*, 13 F.Supp. 513 (S.D. N.Y.1935) is an example of a case where a trust transferred property solely for the purpose of filing under former Section 77B of the Bankruptcy Act. Since the trust itself would not have qualified to file under § 77B, the court found a lack of good faith.

In cases of this type, where dismissal has been granted, the sole purpose of the transfer to another entity was to confer jurisdiction of the court upon the new entity and thereby allow reorganization of property which otherwise could not be reorganized under the statute. It is important to remember that Chapter 11 is titled "*business reorganization*", and not "property" reorganization. The test of *Shapiro v. Wilgus*, supra, and all those cases which follow from its reasoning appears to be not merely whether the transfer and change of entity occurred on the eve of bankruptcy, but whether in so doing, the debtor is merely seeking to alter or erode the rights of creditors, either by forestalling them under the guise of reorganization or by availing itself of a type of relief which it otherwise would not be entitled to absent the creation of a new entity. Such was the case in *Mongiello Bros. Coal Corp. v. Houghtaling Properties, Inc.*, 309 F.2d 925 (5th Cir. 1962). There, individuals conveyed property, along with the property of another corporation which they owned, into another new corporation created solely for the purpose of utilizing Chapter X under the old Act, and thereby to avoid, among other things, the foreclosure by a secured party. The court there held that the petition was not filed in good faith since the individuals who owned the property prior to the transfer to the new entity would not have qualified for Chapter X relief. In *Shapiro v. Wilgus*, supra, the leading case in this area, the Supreme Court dismissed a receivership proceeding saying that had the aim of filing the receivership been to administer the assets of a corporation legitimately conceived for a normal business purpose and functioning or designed to function according to normal business methods, it would not have dismissed the proceeding. *Shapiro v. Wilgus*, supra at 355, 53 S.Ct. at 144.

The court in *In re Dutch Flat Investment Co.*, 6 B.R. 470, 6 B.C.D. 1134 (Bkrtcy.N.D. Cal.1980) found bad faith where the corpo-

ration was organized immediately prior to the filing of the Chapter 11 petition, for the sole purpose of commencing the proceedings so as to forestall the exercise by the secured creditor of its rights, the debtor's had little or no assets, no ongoing business, employees, or unsecured creditors other than a nominal amount owing to one unsecured creditor, and finally, there was no reasonable prospect for reorganization. The court reasoned that it was in the best interest of creditors, particularly where there were no unsecured creditors to speak of, that the case be dismissed in order that the jurisdictional integrity of the court be protected.

Finally, in a case in this district, Bankruptcy Judge Thomas W. Lawless dismissed the proceedings of *In re G–2 Realty Trust*, 6 B.R. 549, 6 B.C.D. 1072 (Bkrtcy.D.Mass. 1980) where he found that the debtor's transformation on the eve of bankruptcy was effected solely to become eligible under Chapter 11, the alteration was one merely of form and not substance, and therefore no legitimate business purpose existed nor could there by any valid attempt to facilitate reorganization. Citing *In re Joseph Mass*, supra at 975, the court said that it must satisfy itself that the debtor demonstrates "exemplary motives and scrupulous good faith". *In re G–2 Realty Trust*, supra 6 B.R. 549, 6 B.C.D. at 1075.

However, in contrast to these cases is the case of *Northwest Recreational Activities, Inc.*, cited above. There, the bankruptcy court held that while the corporation was hastily formed contemporaneously with the filing of the Chapter 11 petition, it was created for a legitimate business purpose and the decision to transfer the property was made separately and prior to a decision to file for Chapter 11 relief. The court found that the action of forming the corporation did not give the debtor an improved status vis-a-vis his creditors, nor did it alter the rights of secured creditors since the owners of the corporation could have filed for Chapter 11 relief in their individual capacities prior to incorporation.

■ Thus, the principal consideration always seems to be that the Act (or Code) not be "abused by the extension of its privileges to those not within the contemplation of it." *Mongiello Bros.*, supra at 930. Further, those entities which seemingly would qualify for relief but for the proximity of their creation with the filing date must establish more than just any business reason for the transfer of property and subsequent contemporaneous filing. As Judge Lawless stated in *Joseph Mass*,

I am not prepared to say that in all cases a transfer of form to procure eligibility to file should not be recognized. But the powers of Chapter XII should be awakened only in cases where there are exemplary motives and *scrupulous good faith.* (emphasis added). *In re Joseph Mass*, supra at 974–75.

■ Turning now to the case at hand, certain facts are pertinent to the determination of whether this particular petition was filed in good faith. First, there was a transfer of property on the eve of the filing of a petition. Second, the transfer was from an unqualified debtor to a newly formed corporation which, but for the allegation of bad faith, is a qualified debtor under the Code. Third, the corporation filed for Chapter 11 relief one day after the transfer. Fourth, the corporation has never operated, shown a cash flow, or generated any profit. Fifth, the debtor has never shown the court any concrete proposal for the prospective financial viability of this corporation in the future. Sixth, the debtor lists only one unsecured creditor in its schedules, for the amount of $200, which is nominal, considering that it has potential liability in excess of $400,000. Finally, and most importantly, it appears that the sole purpose for the Chapter 11 proceeding is to allow the debtor to avail itself of the bankruptcy court's jurisdiction to hear and determine questions of real estate tax liability without requiring the debtor to pre-pay the tax assessed against it.

To state the case more succinctly, the debtor proposes to reorganize by taking in its first mortgagee as an equity participant in the redevelopment of the Monson Academy property. However, in order to do so it

must first seek an abatement of a tax assessment by the Town of Monson which the debtor and its first mortgagee feel is excessive. If the debtor were to follow the normal administrative procedures, it would be required to pre-pay its tax liability before seeking an abatement. Since this would necessarily require the sale of the property to generate sufficient funds to pre-pay its tax liability, the debtor would prefer to retain its property and have the bankruptcy court make the determination. I feel my observations here are buttressed by the fact that the debtor has reached agreement with all its creditors except the Town of Monson. Thus, the only need for the equitable relief of this court would appear to be as to the need for a determination of the tax debt. Furthermore, the debtor has actively sought such a determination in this court, leading me to believe that it is not seeking to forestall the tax creditor, but to have its claim adjudicated. Thus, I cannot say that this case falls into line with those cases which have dismissed on the basis that the petition was filed solely to alter or preclude the exercise of a secured creditor's rights. Here, the debtor is actively seeking determination of the rights of the only creditor with which it has a dispute.

Moreover, I am not prepared to say that the transfer on the eve of bankruptcy was one which was in bad faith. The debtor has made an arguable claim that the transfer was necessary to allow for the development of this property into some use other than as a private school and that equity participation was necessary to generate capital by which to effect this development. Thus, I don't feel this case falls into line with those cases which have dismissed for lack of a valid business purpose for the transfer of a property on the eve of bankruptcy.

However, I am troubled by the fact that the sole purpose for invoking the jurisdiction of the federal bankruptcy court was to have determined a local real estate tax liability. I'm not aware of any prior decision on point in this regard, but it appears to me that on the specific facts of this case, I can allow the motion to dismiss. This case is comparable to *In re Dutch Flat Investment Co.*, supra. Where, as here, there is a paucity of unsecured creditors, for whom business reorganization was principally created, there has never been an operating company to establish a business and economic history, there is no fundamental proposal or projection regarding the future operations of this debtor except for a vague plan for the development of its sole asset, and where there was a transfer of this asset to a newly formed corporation on the eve of bankruptcy, the sole purpose of which appears to be the debtor's desire to have this court determine the question of a local tax assessment, I conclude that the petition has not been filed in good faith, as that term is contemplated by the bankruptcy courts.

This court is not a tool by which debtors can seek to have tax questions litigated outside the normal administrative and legal means by which such relief is usually obtained. This is not to say that were this debtor to be one which had been operating, and could show a reasonable likelihood of future operations, that this court could not find the filing to have been in good faith. The question of a tax liability, like any other debt, can be crucial to a business debtor and can have a fundamental impact on its reorganization plans. But here, the need for reorganization is not as apparent. Were it not for the tax dispute, I am doubtful that this case would be in the bankruptcy court at all. To be sure, it appears that the debtor was prepared to effect an out of court reorganization with its secured creditors. Apparently, the Town of Monson's $180,000 tax lien chilled such an arrangement.

Nevertheless, where only one nominal unsecured creditor stands to benefit from a Chapter 11 reorganization, the debtor's economic future is sketchy, at best, and the only purpose to be served by a proceeding in this court is a ruling on whether an abatement of real estate taxes assessed is warranted, all of these adverse factors lead me to the conclusion that this petition was not filed in good faith. To paraphrase Judge Lawless in *Joseph Mass*, I am not prepared to say that in all cases where the

primary goal of the Chapter 11 proceeding is to have a tax liability determined that the court should dismiss. However, where the prospects of reorganization are dim, and the benefits of reorganization are minimal, the question of a tax liability standing alone is insufficient to warrant a finding of good faith.

Therefore, upon the motion of the Town of Monson, and after notice and a hearing, in accordance with the above Memorandum, it is hereby ORDERED, ADJUDGED and DECREED that the Motion to Dismiss the within Chapter 11 proceeding hereby is GRANTED.