**In re David A. JONES, Debtor.**

**Bankruptcy No. 93–12886–MWV.**

United States Bankruptcy Court, D. New Hampshire.

Sept. 1, 1994.

David A. Jones, pro se.

Catherine Jones, Gloucester, MA, interested party.

Geraldine Karonis, Manchester, NH, for U.S. trustee.

Lawrence Sumski, Chapter 13 Trustee, Amherst, NH.

Mae J. Lew, Boston, MA, for U.S.

Nancy Michels, Michels & Michels, Londonderry, NH, for creditor Everett Noonan, et al.

Robert E. Murphy, Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, NH, for creditor Liberty Mut. Fire Ins. Co. defendant, ADV 93–1168.

David J. Rogers, Salem, NH, for creditor Alfred E. Thomson, et al., defendant, ADV 94–1017.

Vincent A. Coppola, Peitragallo, Bosick & Gordon, Pittsburgh, PA, for defendants Alison & Sterling Miller, ADV 93–1168.

W. Thomas McGough, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for defendant University of Pittsburgh in ADV 93–1168.

Thomas M. Bachman, Sheriff of Essex County, NJ, Newark, NJ, for defendant Sheriff of Essex County, NJ, ADV 94–1050.

Olivia J. Lorenzo, Pittsburgh, PA, for defendant Alison & Sterling Miller, ADV 93–1168.

Mary M. Howie, Salem, NH, for defendant Alfred E. Thomson, et al., ADV 94–1017.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The matter before the Court is a Motion of the United States Trustee ("Trustee") for Order Dismissing the Case and for Other Relief ("Motion"). In the Motion, the Trustee requests that the case be dismissed pursuant to 11 U.S.C. § 1307(c), that the Court assess sanctions and/or costs against the debtor and that the Court enjoin the debtor from refiling any petition in bankruptcy for a minimum of one year.

The debtor filed his objection to the Motion and both parties filed memoranda of law in support of their positions. An evidentiary hearing was held on the Motion on July 6, 1994. For the reasons set out below and based on the evidence presented at that hearing, other pleadings in this case to which the Court takes judicial notice and the pleadings relevant to the Motion, the Court:

1. grants the Trustee's motion to dismiss;
2. denies the Trustee's motion for sanctions; and
3. denies the Trustee's motion for injunctive relief.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

On October 12, 1993, the debtor, David A. Jones, Esquire, filed a petition for relief under chapter 13 of the Bankruptcy Code. On November 26, 1993, after obtaining an extension from this Court, the debtor filed his schedules. In Schedule I to the petition, the debtor listed his occupation and employer as "professor and attorney, University of Pittsburgh, Pittsburgh, PA 15260" and a total monthly income of $10,640.00. All creditors' claims listed other than relatives of the debtor are disputed and/or subject to set-off. His statement of assets includes claims against the Liberty Mutual Fire Insurance Company of $1.3 billion and against the University of Pittsburgh of $3.5 million. His stated exemptions refer to 11 U.S.C. § 522(b), although the State of New Hampshire has elected to opt out of the federal exemptions.

On November 26, 1993, the debtor also filed a chapter 13 plan providing for payments to the chapter 13 trustee of $1,353.33 per month. These funds were to be contributed as follows:

> Debtor consents to the Trustee's supervision/collection of income from the University of Pittsburgh *only,* and there only up to (monthly) $1,353.33. That sum may be collectable only by Adversary Proceeding. Any funds available from the University of Pittsburgh the chapter 13 trustee may collect on or after filing of this plan plus thirty days. All other funds, if any, necessary to fund this plan must be contributed voluntarily by the debtor, annually commencing December 6, 1994.

(Trustee's Exhibit 4.) No payments were made by the debtor to the chapter 13 trustee under this plan. On March 14, 1994, the debtor filed a first amended plan of reorganization. This plan provided for the payment of $10.00 per month to the chapter 13 trustee until the University of Pittsburgh turned over the sum of $8,333.00 to the debtor. The $10.00 per month payments have been made to the chapter 13 trustee. The funding of payments to creditors, other than the debtor's wife, are apparently from funds to be collected from the University of Pittsburgh. The claim of the debtor's wife is for an alleged assignment of fees due the debtor and "earmarked as child support by an agreement notarized on January 13, 1993, between the debtor and his wife."[1]

From the filing date to July 6, 1994, the debtor instituted five adversary proceedings in this Court. Four of them are in some manner related to the debtor's continued litigation with Sterling and Alison Miller, former landlords of the debtor. They are: *David A. Jones v. Sterling P. Miller, et al.,*

---

1. The Court takes judicial notice that the proof of claim filed by the debtor's wife, Catherine M. Jones, contains no supporting documentation for that claim.

Adv.Proc. No. 93–1168–MWV;[2] *David A. Jones v. Alfred E. Thomson, d/b/a Thomson Properties and Atlas Self–Storing III, et al.,* Adv.Proc. No. 94–1017–MWV; *David A. Jones v. Liberty Mutual Fire Insurance Co.,* Adv.Proc. No. 94–1027–MWV;[3] *David A. Jones v. Sheriff of Essex County, New Jersey,* Adv.Proc. No. 94–1050–MWV (seeking turnover of funds and recovery of alleged preferences).[4] The fifth adversary proceeding relates to property that the debtor leased during the course of this case. It is *David A. Jones v. Donald P. Garrity, et al.,* Adv. Proc. No. 94–1059–MWV.

On June 10, 1994, the Trustee filed the Motion with this Court. The Trustee's certificate of service indicated that the debtor was served by first class mail at his post office box in Lincoln, New Hampshire, as listed in his petition, and also at his Gloucester, Massachusetts, address. On June 20, 1994, the debtor filed his objection to the Motion. On July 5, 1994, the debtor essentially moved to continue the hearing scheduled for July 6, 1994, on the grounds that he did not have sufficient time to prepare for an evidentiary hearing. Included in the motion was a request that it be rescheduled "for a time certain in the future after the Congressional investigation has been concluded," which Congressional investigation was alluded to in his pleading.[5] The Court, on July 6, 1994, denied the motion on the grounds that the debtor, an attorney, had adequate time to prepare for an evidentiary hearing having

had knowledge of the hearing date for almost one month.[6]

## DISCUSSION

The first issue raised by the Trustee which this Court will address is whether the Bankruptcy Court for the District of New Hampshire was the proper court for this debtor to file his chapter 13 petition. 28 U.S.C. § 1408 states as follows:

§ 1408. Venue of cases under title 11.

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

■ The Trustee argues that, on the date of filing, the debtor resided in Gloucester,

---

**2.** This adversary also contains three counts against the University of Pittsburgh unrelated to the Miller litigation.

**3.** This adversary has been withdrawn on motion of the debtor.

**4.** The Court notes that subsequent to the debtor's filing of this adversary proceeding, this Court ruled in an unrelated case that except to enhance the debtor's exemptions under section 522 of the Code, the chapter 5 avoiding powers of a trustee are not available to a chapter 13 debtor. *Cardillo v. Andover Bank (In re Cardillo),* 169 B.R. 8 (Bankr.D.N.H.1994).

**5.** Paragraph 5 of debtor's motion included the following:

Debtor has absolutely no intention of participating in an evidentiary "hearing" that functionally would be held *ex parte* because of its inadequate notice to him, and has requested

his United States Congressman to initiate a full-scale Congressional investigation as to the motive of the Clinton Administration's Department of Justice (a) in seeking dismissal of Debtor's case, (b) in flying in witnesses "from all over the country" at apparently unusual expense to the taxpayers, and (c) in attempting to orchestrate without adequate prior notice an evidentiary hearing that, if held, would severely prejudice Debtor, by precluding him from even being able to effectively cross-examine Movants' witnesses, and from being able to use compulsory process to ensure the attendance thereat of witnesses favorable to the Debtor.

**6.** At the hearing, the Trustee represented to the Court that her letter to this Court filing the Motion indicated that the Court had set the Motion for *an evidentiary hearing* on July 6, 1994, in bold type, a copy of which was served on the debtor. The Court takes judicial notice of this letter which was filed in this Court on June 10, 1994.

Massachusetts, and, thus, the filing in New Hampshire is improper. The only address listed on the debtor's petition is a post office box in Lincoln, New Hampshire. The debtor counters by stating that he spent the longer portion of the 180 days preceding the filing of his chapter 13 case in New Hampshire and, thus, the filing in the District of New Hampshire is proper. The evidence before the Court supports the debtor's argument. The case was filed on October 12, 1993, and the 180 days preceding the filing would take one back to approximately April 8, 1993. The evidence indicates that the debtor resided in Lincoln, New Hampshire, from July 1, 1993, to September 6, 1993, or 68 days. Included in the Trustee's Exhibit no. 7 is a letter dated October 18, 1993, from the debtor to "Loon 93 Realty." In that letter, the debtor states that they actually vacated the property on Friday, October 15, 1993. The Court notes that this is inconsistent with the Gloucester lease, which commenced on September 6, 1993. The debtor's petition further indicates that he resided in assorted New Hampshire campgrounds during May and June, 1993. No contrary evidence was introduced other than the Gloucester lease, (Trustee's Exhibit 6), which accounts only for the period of September 6 through October 12, a period of 36 days prior to the filing. Based on the evidence before it, the Court finds that the filing of the chapter 13 case in New Hampshire was proper and not cause for dismissing the case.[7]

■ Section 1307(c) of the Bankruptcy Code provides that, upon request from a party in interest or the United States Trustee, the Court may dismiss a case or convert a case under chapter 13 "for cause, including—." Section 1307(c)(4) includes as a clause, "failure to commence making timely payments under § 1326 of this title." Section 1326 requires that the debtor, unless the Court orders otherwise, commence making payments within thirty days of the filing of a plan. There has been no order of this Court extending that deadline. The facts of this case support dismissal on this ground alone. The debtor filed his original chapter 13 plan on October 12, 1993. No payments were made under that plan and, in fact, the plan did not provide for payments. On March 14, 1994, the debtor filed an amended plan which provided for payments of $10.00 per month, which the chapter 13 trustee confirms the debtor has been making through the July 6, 1994, hearing. The $10.00 per month payments continue under the amended plan until the debtor recovers funds from the University of Pittsburgh, which is the subject of an adversary proceeding, at which time, if ever, payments to the chapter 13 trustee increase to $600.00 per month. There is no guarantee that the funds will ever be received from the University of Pittsburgh[8] and the $10.00 per month payment over the debtor's five year plan would come to a total of $600.00, an amount insufficient to meet the requirements of section 1322(a)(2), payment of section 507 priority claims.[9] The Court finds that the debtor has failed to make payments to the chapter 13 trustee required by section 1326, which, by itself, is grounds for dismissal.

■ The Trustee also seeks dismissal under 11 U.S.C. § 1307(c) on the grounds that the petition was filed in bad faith. In *Cardillo v. Andover Bank (In re Cardillo)*, 169 B.R. 8 (Bankr.D.N.H.1994), this Court stated:

This Court acknowledges that a finding of "lack of good faith is sufficient cause for dismissal under chapter 13." *In re Love*, 957 F.2d [1350] at 1354 [ (7th Cir.1992) ]. However, this Court further notes that:

---

**7.** At the conclusion of the July 6, 1994, hearing, the debtor requested a continuance to present rebuttal witnesses, his wife and mother, to substantiate his residency, which the Court, in its discretion, denied. Based on the Court's ruling as to residency, these witnesses, in any case, would have proven unnecessary.

**8.** The Court takes judicial notice that the University of Pittsburgh has filed a motion to dismiss based on a signed release given to it by the debtor.

**9.** Internal Revenue Service has filed a claim in the amount of $9,461.00 to which the debtor has objected. However, the debtor's schedules show an amount due of $1,600.00, which is greater than the amount to be paid to the chapter 13 trustee at the $10.00 per month level.

1. The burden is on [the moving party] to show lack of good faith. *Id.* at 1355.
2. There is no presumption of lack of good faith. *Id.*
3. Several courts have stated that dismissal for lack of good faith should only be in extraordinary circumstances. *Id.* at 1356.
4. The Court should be more reluctant to dismiss a case under section 1307 than deny confirmation under section 1325.

*Cardillo,* 169 B.R. at 10. This Court finds that the totality of the circumstances test enumerated in *Love* is the appropriate standard for dismissal of a case for lack of good faith. Based on the Court's finding above and, for the reasons set out below, this Court finds that the totality of the circumstances in the instant case justifies dismissal.

First, section 109(e) of the Bankruptcy Code provides that only an "individual with regular income" may be a debtor under chapter 13 of the Bankruptcy Code. Section 101(30) defines "individual with regular income" as "an individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30). The requirement that the income of the debtor be "sufficiently stable and regular" to enable the debtor to make payments under the chapter 13 plan is not met by mere allegations that there is an income potential which is contingent upon developments that appear unlikely based on the evidence before the Court. 5 *Collier on Bankruptcy* ¶ 1300.40[1] at 1300–83 (L. King ed., 15th ed. 1993).

The debtor testified that his current income was insufficient to support he and his wife and their six minor children and fund the chapter 13 plan. The only evidence of recent income was a temporary position at Clark University which has since concluded, and minor consulting fees. The debtor provided no testimony at the July 6, 1994, hear-ing on either future jobs or future income other than that he was actively seeking employment and would have income if he ultimately prevailed in the various litigation he was pursuing. The chapter 13 plan, as noted above, relies on successful litigation with the University of Pittsburgh to fund the plan, but as noted above, the University of Pittsburgh has filed a motion to dismiss based on the signed release by the debtor. The Court finds that the debtor is not an individual with regular income.

Second, the Bankruptcy Court for the District of New Hampshire, in the chapter 11 case of *In re Marsh Fairway Corp.*, dismissed that chapter 11 case finding, "... the litigation here is the entire core of the so-called plan of reorganization, i.e., this Court would have to do exactly what the state courts would do in the state court lawsuits to determine the rights of the debtor and the objecting parties before any plan could be considered for confirmation." *In re Marsh Fairway Corp.*, 148 B.R. 721, 723 (Bankr. D.N.H.1992). While this Court realizes that the *Marsh* case was a chapter 11 case, it finds the reasoning of *Marsh* persuasive in the chapter 13 context also. The debtor in the instant case had prior to the July 6, 1994, hearing instituted five adversary proceedings—success in one of which was designated to provide funds to satisfy his wife's alleged secured claim and success in another to provide funds for the funding of the amended chapter 13 plan.[10] This entire chapter 13 case revolves around litigation that has been going on between the debtor and the Millers since 1991 when a lease of premises located in Pittsburgh, Pennsylvania, owned by the Millers and leased by the debtor expired. At the July 6, 1994, hearing, Attorney Vincent Coppolla, who has personally represented the Millers for the last two years and whose law firm has represented the Millers since at least 1991, testified as to the myriad of legal proceedings brought against his clients by the debtor in state and federal courts and administrative tribunals. He further testified and was corroborated by the testimony

---

10. The Court takes judicial notice that on August 31, 1994, the debtor filed a sixth adversary proceeding against the University of Pittsburgh ask-ing for $20,000,000.00 in damages and a jury trial.

of Mr. Miller that the Millers have expended in excess of $70,000.00 in legal fees as a result of litigation with the debtor and hold a judgment against the debtor for $38,500.00. Moreover, the debtor himself admitted at the hearing that he will be unable to fund his plan absent successful litigation outcomes. As Judge Yacos found in the *Marsh* case, because successful litigation by the debtor here would be necessary before this Court could confirm the debtor's chapter 13 plan, this plan is not a plan of reorganization within the intended spirit of chapter 13.

Third, this is not the first chapter 13 case filed by the debtor or his spouse. The debtor's wife, Catherine Mary Jones, filed a chapter 13 case in the Bankruptcy Court for the Western District of Pennsylvania on March 15, 1993, which case was dismissed on April 16, 1993, for the debtor's failure to file the appropriate schedules.[11] On May 6, 1993, the Bankruptcy Court for the District of New Jersey dismissed a chapter 13 case of the debtor in accordance with the debtor's request for a voluntary dismissal. (Trustee's Exhibit 2.) This chapter 13 case was filed on October 12, 1993. On June 9, 1994, after this Court had granted relief to the debtor's then-landlord on June 7, 1994, the debtor's spouse filed a chapter 13 petition in the United States Bankruptcy Court for the District of Massachusetts, which was dismissed by that court on June 13, 1994. (Trustee's Exhibit 9.)

■ The Court realizes that there are no express statutory prohibitions against the filing of successive or serial chapter 13 petitions. The United States Supreme Court has so held. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). However, it is also clear from the case law that, while the filing of successive or serial chapter 13 cases does not evidence bad faith, *per se,* it may be evidence of lack of good faith. *In re Earl,* 140 B.R. 728 (Bankr. N.D.Ind.1992).

The unrefuted testimony of Attorney Coppolla is that the Pennsylvania and the New Jersey cases were filed to invoke the automatic stay and thwart his clients from exercising their remedies. Likewise, the June 9, 1994, filing by the debtor's spouse was filed in order to invoke the protection of the automatic stay with respect to the debtor's and his spouse's current landlord from which this Court had just granted relief.

Finally, this Court believes that the original plan and the amended plan filed by the debtor were filed in bad faith. Both plans essentially provide for payments only to the debtor's wife and other relatives while rejecting the claims of most possible other creditors such as the Millers. Although the debtor classified his wife as a "priority secured creditor," the debtor could give no evidence as to the validity of his wife's claim as secured at the July 6, 1994, hearing. While it appears that the Millers' proof of claim was filed late, they did have a judicial lien on funds due the debtor in New Jersey which should have been dealt with under the plan.

For all of the above reasons, i.e., failure to make timely payments, the debtor not being an individual with regular income, the plan being a plan of litigation—both as originally filed and as amended—the serial filings of the debtor and his spouse, and the fact that this Court finds that the plan is proposed in bad faith, the totality of the circumstances requires that this chapter 13 case be dismissed.

■ The Trustee has also requested that the Court impose monetary sanctions against the debtor. This Court believes that, for sanctions to be meaningful, they must be enforceable. The Court has found that the debtor does not have the kind of stable income necessary to fund a chapter 13 plan and the debtor's schedules show virtually no assets actually in the possession of the debtor. Monetary sanctions would further impose hardship upon the debtor's family, which is not the purpose of imposing sanctions. The Court denies the Trustee's request for monetary sanctions.

---

11. Trustee's Exhibit 1. Based on the debtor's testimony at the July 6, 1994, hearing that his wife was not employed and his Statement of Affairs, in which he states that his wife had not generated any income in 1990, 1991, 1992 or 1993, it is difficult to understand how the debtor's wife would qualify for chapter 13 relief. *See* 11 U.S.C. § 109(e) (requiring "regular income").

Finally, the Trustee has requested that the Court enjoin the debtor from refiling bankruptcy for a period of one year. The Court also denies this invitation. As has been shown above, the debtor's spouse, not before this Court, has on two occasions filed bankruptcy cases. To just enjoin the debtor from filing may not accomplish the results sought by the Trustee. Rather than enjoin the debtor in this case, it is the Court's hope that should the debtor or his wife refile in any court, this opinion will be brought to the attention of that court.

A separate order will issue in accordance with this opinion.

Philip W. Noel, Charles McGovern, McGovern Noel & Benik, Providence, RI, for debtor.

Lawrence R. Katz, Gadsby & Hannah, Boston, MA, for Healthcare Partners.

George E. Babcock, Providence, RI, for David M. Ryan and Health Concepts, Inc.

Sheryl Serreze, Office of U.S. Trustee, Providence, RI.